# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

```
------------------------------x
                              :
MARCELLO DEMICO               :      Civ. No. 3:17CV00805(SALM)
                              :
v.                            :
                              :
NANCY A. BERRYHILL,           :
ACTING COMMISSIONER OF        :
SOCIAL SECURITY              :      May 17, 2018
                              :
------------------------------x
```

## RULING ON CROSS MOTIONS

Plaintiff Marcello DeMico ("plaintiff"), brings this appeal under §205(g) of the Social Security Act (the "Act"), as amended, 42 U.S.C. §405(g), seeking review of a final decision by the Commissioner of the Social Security Administration (the "Commissioner" or "defendant") denying his application for Disability Insurance Benefits ("DIB") for the period of December 12, 2002, through March 31, 2005.[1] Plaintiff has moved to reverse that portion of the Commissioner's decision denying him benefits. [Doc. #26]. Defendant has filed a cross motion seeking an order affirming the decision of the Commissioner. [Doc. #31].

---

[1] As will be discussed below, plaintiff was awarded disability benefits for a closed period of July 1, 2001, through December 11, 2002. Plaintiff does not contest that aspect of the Commissioner's decision. See Doc. #26-2 at 2.

For the reasons set forth below, plaintiff's Motion to Reverse the Decision of the Commissioner **[Doc. #26]** is **GRANTED**, to the extent plaintiff seeks a remand for further administrative proceedings, and defendant's Motion for an Order Affirming the Decision of the Commissioner **[Doc. #31]** is **DENIED**.

## I.   PROCEDURAL HISTORY[2]

Plaintiff filed an application for DIB on May 9, 2013, alleging disability beginning July 1, 2001. See Certified Transcript of the Administrative Record, compiled on July 28, 2017, Doc. #12 (hereinafter "Tr.") 221-25.[3] Plaintiff's application was denied initially on July 19, 2013, see Tr. 112-19, and upon reconsideration on May 3, 2014. See Tr. 138-40.

On April 13, 2015, plaintiff, represented by Attorney Alan Rubenstein, appeared and testified at a hearing before Administrative Law Judge ("ALJ") Eskunder Boyd. See Tr. 40-111. Vocational Expert ("VE") Ruth Baruch testified by telephone at that hearing. See Tr. 87-89, 91-106, 270-74. Plaintiff's wife,

---

[2] With his motion, plaintiff provided a Proposed Statement of Facts. See Doc. #26-1. Defendant "generally adopts the facts as stated therein[,]" but "has included a narrative of additional facts which are relevant to the arguments asserted by Plaintiff[.]" See Doc. #31-1 at 2.

[3] Plaintiff's initial application reflects the date of July 12, 2013. See Tr. 221-25. However, the application states in two separate areas: "On May 9, 2013, we talked with you and completed your application for SOCIAL SECURITY BENEFITS." Tr. 221, 222.

Kim Alyson also appeared and testified at the administrative hearing. See Tr. 80-87. On May 12, 2015, the ALJ issued a partially favorable decision. See Tr. 19-39. On March 2, 2017, the Appeals Council denied plaintiff's request for review, thereby making the ALJ's May 12, 2015, decision the final decision of the Commissioner. See Tr. 5-7. The case is now ripe for review under 42 U.S.C. §405(g).

Plaintiff, now represented by Attorney Ivan Katz, timely filed this action for review and now moves to reverse that portion of the Commissioner's decision finding plaintiff not disabled from December 12, 2002, through March 31, 2005. [Doc. #26].[4] On appeal, plaintiff argues:

1. The ALJ failed to properly develop the administrative record;

2. The ALJ's Residual Functional Capacity ("RFC") determination is not supported by substantial evidence;

3. The ALJ's finding of medical improvement is not supported by substantial evidence;

4. The ALJ failed to consider plaintiff's "chronic pain"; and

_____

[4] Plaintiff received an extension of time through May 18, 2017, "to commence a civil action for the purpose of reviewing the decision issued on May 12, 2015, by an Administrative Law Judge[.]" Tr. 1. The Complaint was filed on May 18, 2017. [Doc. #1].

5. The ALJ improperly relied on the testimony of the VE. See generally Doc. #26-2 at 2-23. As set forth below, the Court finds that the ALJ failed to properly develop the administrative record.

## II.  **STANDARD OF REVIEW**

The review of a Social Security disability determination involves two levels of inquiry. First, the Court must decide whether the Commissioner applied the correct legal principles in making the determination. Second, the Court must decide whether the determination is supported by substantial evidence. See Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998) (citation omitted). Substantial evidence is evidence that a reasonable mind would accept as adequate to support a conclusion; it is more than a "mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The reviewing court's responsibility is to ensure that a claim has been fairly evaluated by the ALJ. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983).

The Court does not reach the second stage of review – evaluating whether substantial evidence supports the ALJ's conclusion – if the Court determines that the ALJ failed to apply the law correctly. See Norman v. Astrue, 912 F. Supp. 2d 33, 70 (S.D.N.Y. 2012) ("The Court first reviews the

Commissioner's decision for compliance with the correct legal standards; only then does it determine whether the Commissioner's conclusions were supported by substantial evidence." (citing Tejada v. Apfel, 167 F.3d 770, 773-74 (2d Cir. 1999))). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987).

"[T]he crucial factors in any determination must be set forth with sufficient specificity to enable [a reviewing court] to decide whether the determination is supported by substantial evidence." Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984) (alterations added) (citing Treadwell v. Schweiker, 698 F.2d 137, 142 (2d Cir. 1983)). The ALJ is free to accept or reject the testimony of any witness, but a "finding that the witness is not credible must nevertheless be set forth with sufficient specificity to permit intelligible plenary review of the record." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 260-61 (2d Cir. 1988) (citing Carroll v. Sec. Health and Human Servs., 705 F.2d 638, 643 (2d Cir. 1983)). "Moreover, when a

finding is potentially dispositive on the issue of disability, there must be enough discussion to enable a reviewing court to determine whether substantial evidence exists to support that finding." Johnston v. Colvin, No. 3:13CV00073(JCH), 2014 WL 1304715, at *6 (D. Conn. Mar. 31, 2014) (citing Peoples v. Shalala, No. 92CV4113, 1994 WL 621922, at *4 (N.D. Ill. Nov. 4, 1994)).

It is important to note that in reviewing the ALJ's decision, this Court's role is not to start from scratch. "In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." Talavera v. Astrue, 697 F.3d 145, 151 (2d Cir. 2012) (quoting Lamay v. Comm'r of Soc. Sec., 562 F.3d 503, 507 (2d Cir. 2009)). "[W]hether there is substantial evidence supporting the appellant's view is not the question here; rather, we must decide whether substantial evidence supports the ALJ's decision." Bonet ex rel. T.B. v. Colvin, 523 F. App'x 58, 59 (2d Cir. 2013) (citations omitted).

## III. SSA LEGAL STANDARD

Under the Social Security Act, every individual who is under a disability is entitled to disability insurance benefits. 42 U.S.C. §423(a)(1).

To be considered disabled under the Act and therefore
entitled to benefits, a plaintiff must demonstrate that he or
she is unable to work after a date specified "by reason of any
medically determinable physical or mental impairment which can
be expected to result in death or which has lasted or can be
expected to last for a continuous period of not less than 12
months." 42 U.S.C. §423(d)(1)(A). Such impairment or impairments
must be "of such severity that he is not only unable to do his
previous work but cannot, considering his age, education, and
work experience, engage in any other kind of substantial gainful
work which exists in the national economy." 42 U.S.C.
§423(d)(2)(A); 20 C.F.R. §404.1520(c) (requiring that the
impairment "significantly limit[] ... physical or mental ability
to do basic work activities" to be considered "severe").[5]

---

[5] Some of the Regulations cited in this decision were amended,
effective March 27, 2017. Throughout this decision, and unless
otherwise specifically noted, the Court applies and references
the versions of those Regulations that were in effect at the
time of the ALJ's decision. See Lowry v. Astrue, 474 F. App'x
801, 805 n.2 (2d Cir. 2012) (applying and referencing version of
regulation in effect when ALJ adjudicated plaintiff's claim);
see also Alvarez v. Comm'r of Soc. Sec., No. 14CV3542(MKB), 2015
WL 5657389, at *11 n.26 (E.D.N.Y. Sept. 23, 2015) ("[T]he Court
considers the ALJ's decision in light of the regulation in
effect at the time of the decision." (citing Lowry, 474 F. App'x
at 805 n.2)).

There is a familiar five-step analysis used to determine if a person is disabled. See 20 C.F.R. §404.1520. In the Second Circuit, the test is described as follows:

> First, the Secretary considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Secretary next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Secretary will consider him disabled without considering vocational factors such as age, education, and work experience; the Secretary presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam). If and only if the claimant does not have a listed impairment, the Commissioner engages in the fourth and fifth steps:

> Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the Secretary then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of proof as to the first four steps, while the Secretary must prove the final one.

Id.

"Through the fourth step, the claimant carries the burdens of production and persuasion, but if the analysis proceeds to

the fifth step, there is a limited shift in the burden of proof and the Commissioner is obligated to demonstrate that jobs exist in the national or local economies that the claimant can perform given [her] residual functional capacity." Gonzalez ex rel. Guzman v. Dep't of Health and Human Serv., 360 F. App'x 240, 243 (2d Cir. 2010) (citing 68 Fed. Reg. 51155 (Aug. 26, 2003)); Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam)). The RFC is what a person is still capable of doing despite limitations resulting from his or her physical and mental impairments. See 20 C.F.R. §404.1545(a)(1).

"In assessing disability, factors to be considered are (1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." Bastien v. Califano, 572 F.2d 908, 912 (2d Cir. 1978). "[E]ligibility for benefits is to be determined in light of the fact that 'the Social Security Act is a remedial statute to be broadly construed and liberally applied.'" Id. (quoting Haberman v. Finch, 418 F.2d 664, 667 (2d Cir. 1969)).

## IV. <u>MEDICAL IMPROVEMENT STANDARD</u>

Because this matter presents an issue of medical improvement after a finding of a closed period of disability, the Court briefly addresses the standard applied to claims implicating medical improvement.[6]

Under the medical improvement standard, the Commissioner "may terminate benefits to a person previously adjudged to be disabled only upon substantial evidence that the individual's condition has improved to the point that he or she is no longer disabled[.]" <u>De Leon v. Sec'y of Health & Human Servs.</u>, 734 F.2d 930, 936 (2d Cir. 1984) "Medical improvement is defined as any decrease in the medical severity of a claimant's impairment which was present at the time of the most recent favorable medical decision that he or she was disabled or continues to be disabled." <u>Nascimento v. Colvin</u>, 90 F. Supp. 3d 47, 53 (E.D.N.Y. 2015) (citation omitted). "Thus, in order to determine whether medical improvement has occurred, the SSA must compare the current medical severity of the impairment to the medical severity of that impairment at the time of the most recent favorable medical decision." <u>Veino v. Barnhart</u>, 312 F.3d 578,

---

[6] The parties do not contest that the medical improvement standard discussed herein applies to medical improvement cases involving a closed period of disability.

586-87 (2d Cir. 2002) (internal quotation marks omitted) (quoting 20 C.F.R. §404.1594(b)(7)).[7] "A determination that there has been a decrease in medical severity must be based on improvement in the symptoms, signs, and/or laboratory findings associated with [a claimant's] impairment(s)[.]" 20 C.F.R. §404.1594(b)(1).

"To determine whether or when a claimant has medically improved and is no longer entitled to benefits, the SSA regulations outline an eight-step evaluation process, which Courts have also applied in closed period cases." McDonagh, 2017 WL 9286987, at *10. "While the Second Circuit has not directly ruled on this issue, several other Circuits have found that indeed the medical improvement standard is appropriate for closed period disability cases." Chavis v. Astrue, No. 5:07CV0018(LEK)(VEB), 2010 WL 624039, at *5 (N.D.N.Y. Feb. 18, 2010); see also Carbone v. Astrue, No. 08CV2376(NGG), 2010 WL 3398960, at *13 (E.D.N.Y. Aug. 26, 2010); Deronde v. Astrue, No. 7:11CV0998(GTS)(ESH), 2013 WL 869489, at *2 (N.D.N.Y. Feb. 11,

---

[7] "For closed period cases like the instant case, the most recent favorable medical decision for comparison purposes is the disability onset date." McDonagh v. Acting Comm'r of Soc. Sec., No. 1:16CV08698(VSB)(KHP), 2017 WL 9286987, at *10 (S.D.N.Y. Nov. 27, 2017), report and recommendation adopted, 2018 WL 2089340 (May 2, 2018).

2013), report and recommendation adopted, 2013 WL 868076 (Mar. 7, 2013) ("The Second Circuit has not confirmed whether the eight-step process is appropriate for closed-period disability cases. District courts in the Second Circuit, however, note that it is an appropriate standard." (internal citation omitted)).

The Regulations set forth the eight steps applicable to a determination of whether a claimant has medically improved. See 20 C.F.R. §404.1594(f). The eight steps are:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether any of the claimant's impairments meets or equals the severity of the impairments listed in Appendix 1 of Subpart P of Part 404 of the relevant regulations ("Listing"); (3) if not, whether there has been a "medical improvement" demonstrated by a decrease in medical severity; (4) if so, whether the medical improvement was related to the claimant's ability to do work (i.e., whether there has been an increase in the residual functional capacity based on the impairment(s) that was present at the time of the most recent favorable medical determination); (5) if there has been no finding of medical improvement at step three, or if any medical improvement was found not to relate to an ability to work at step four, whether the exceptions listed in paragraphs (d) and (e) of the relevant section apply; (6) if medical improvement is shown to be related to ability to do work, or if one of the relevant exceptions apply, whether all of the claimant's current impairments in combination are severe; (7) if so, whether claimant can perform previous work based upon an assessment of the claimant's residual functional capacity considering all of the claimant's current impairments; and (8) if claimant is unable to perform past work, whether, given claimant's residual functional capacity and considering the claimant's age, education, and past work experience, other work exists in the national economy that the claimant can perform.

Galente v. Acting Comm'r of Soc. Sec., No. 1:16CV09981(KHP),
2018 WL 852113, at *11 (S.D.N.Y. Feb. 12, 2018) (citing 20
C.F.R. §404.1594(f)(1)-(8)); see also McDonagh, 2017 WL 9286987,
at *10. "Under this analytical model, the burden rests with the
Commissioner at every step." Deronde, 2013 WL 869489, at *3.

## V.    THE ALJ'S DECISION

By decision dated May 12, 2015, the ALJ found plaintiff
disabled between July 1, 2001, and December 11, 2002. See Tr.
30-31. At step one of the five-step sequential evaluation, the
ALJ found that plaintiff had not engaged in substantial gainful
activity since July 1, 2001, "the date the claimant became
disabled." Tr. 27. At step two, the ALJ found that from July 1,
2001, through December 11, 2002, plaintiff had the severe
impairment of ulcerative colitis. See id.

At step three, the ALJ found that from July 1, 2001,
through December 11, 2002, that plaintiff did not have an
impairment, or combination of impairments, that met or medically
equaled any of the listed impairments in 20 C.F.R. Pt. 404,
Subpt. P, App. 1. See Tr. 27. The ALJ specifically considered
Listing 5.06 (digestive diseases). See id. Before moving on to
step four, the ALJ found that from July 1, 2001, through
December 11, 2002, plaintiff had the RFC to

> perform sedentary work as defined in 20 CFR 404.1567(a)
> except he could never climb ladders, ropes or scaffolds,

> but could have occasionally climbed stairs/ramps,
> balance, stoop, and crouch with frequent reaching
> overhead. He should have avoided work environments with
> exposure to temperature extremes or humidity. The
> claimant would have been absent four or more times per
> month and would have had unpredictable restroom breaks.

Tr. 27-28.

At step four, the ALJ concluded that from July 1, 2001, through December 11, 2002, plaintiff was not capable of performing his past relevant work as a restaurant manager. See Tr. 29. At step five, after considering plaintiff's age, education, work experience and RFC, as well as the testimony of the VE, the ALJ found that from July 1, 2001, through December 11, 2002, there were no jobs that existed in significant numbers in the national economy that plaintiff could have performed. See Tr. 30-31.

Next, applying the eight-step framework for adjudicating Social Security disability claims involving medical improvement, the ALJ found that "[m]edical improvement occurred as of December 12, 2002, the date the claimant's disability ended." Tr. 31. The ALJ then determined that said medical improvement "is related to the ability to work because there has been an increase in the claimant's residual functional capacity[.]" Tr. 32. The ALJ found that

> beginning December 12, 2002, and through March 31, 2005,
> the claimant had the residual functional capacity to
> perform light work as defined in 20 CFR 404.1567(b)

except he could never climb ladders, ropes or scaffolds, but could have occasionally climbed stairs/ramps, balance, stoop, and crouch with frequent overhead reaching. He should have avoided work environments with exposure to temperature extremes or humidity.

Id. Based on that finding, the ALJ determined: "Beginning December 12, 2002, and through March 31, 2005, the date last insured, the claimant was capable of performing past relevant work as a restaurant manager." Tr. 34. The ALJ ultimately concluded that although plaintiff was disabled from July 1, 2001, through December 11, 2002, that disability ended on December 12, 2002. See id.

## VI.   DISCUSSION

Plaintiff raises several arguments in support of reversal or remand. Before turning to those arguments, the Court pauses first to note the relevant time period under consideration.

### A.   Relevant Time Period Under Consideration

Plaintiff's claim is for DIB. See Tr. 221-25. A claimant seeking DIB for a period of disability must, in addition to presenting evidence of his or her disability, also satisfy the "insured status" requirements of the Act. See 42 U.S.C. §423(a), (c). To be entitled to benefits, a claimant must demonstrate that he or she was disabled prior to the expiration of his or her insured status, i.e., his or her date of last insured. See Pratts v. Chater, 94 F.3d 34, 35-36 (2d Cir. 1996); Shaw v.

~ 15 ~

Chater, 221 F.3d 126, 131 (2d Cir. 2000); Monette v. Astrue, 269 F. App'x 109, 111 (2d Cir. 2008); see also 20 C.F.R. §§404.130, 404.131, 404.315(a), 404.320(b).[8] There is no dispute that plaintiff's date of last insured is March 31, 2005. See Tr. 27. Accordingly, the relevant period under consideration is the alleged onset date of July 1, 2001, and more particularly for purposes here, the date of medical improvement, December 12, 2002, through the date of last insured, March 31, 2005.

## B. Development of the Administrative Record

Plaintiff contends that the ALJ failed to adequately develop the administrative record because it does not contain medical opinions from plaintiff's treating sources, and does not contain records from certain of plaintiff's physicians. See generally Doc. #26-2 at 2-10. Defendant "disagrees" and responds that the ALJ sufficiently developed the record. Doc. #31-1 at 9.

"Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record." Perez v. Chater, 77 F.3d 41, 47 (2d Cir. 1996); see also Swiantek v. Comm'r of Soc. Sec., 588 F. App'x 82, 84 (2d Cir. 2015).

---

[8] By contrast, to be entitled to an award of Supplemental Security Income, a claimant must demonstrate that he or she became disabled at any time before the ALJ's decision. See Frye ex rel. A.O. v. Astrue, 485 F. App'x 484, 486 (2d Cir. 2012); 20 C.F.R. §§416.202, 416.203.

However, "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." Rosa v. Callahan, 168 F.3d 72, 79 n.5 (2d Cir. 1999) (citation and internal quotation marks omitted). Accordingly, the duty to develop the administrative record is triggered "only if the evidence before [the ALJ] is inadequate to determine whether the plaintiff is disabled." Walsh v. Colvin, No. 3:13CV687(JAM), 2016 WL 1626817, at *2 (D. Conn. Apr. 25, 2016) (internal quotation marks and citation omitted).

"When an unsuccessful claimant files a civil action on the ground of inadequate development of the record, the issue is whether the missing evidence is significant, and plaintiff bears the burden of establishing such harmful error." Parker v. Colvin, No. 3:13CV1398(JGM)(CSH), 2015 WL 928299, at *12 (D. Conn. Mar. 4, 2015) (quotation marks omitted).

Plaintiff takes issue with the ALJ's development of the record, asserting that the ALJ "made no effort to obtain the opinion of any treating source." Doc. #26-2 at 2. Defendant responds, in pertinent part: "At no point during the [administrative] hearing, despite ample opportunity to do so, did Plaintiff's counsel contend that the record was deficient

due to a lack of treating medical source opinions." Doc. #31-1 at 14. Defendant also contends that the ALJ was under no obligation to further develop the record where there were no obvious gaps in the record and where the record contained adequate evidence from which to make a disability determination. See id. at 9-10.

During the administrative hearing, plaintiff's counsel never asserted that the record was deficient. See generally Tr. 40-111. At the administrative hearing stage, plaintiff was represented by an experienced attorney who specialized in Social Security proceedings.[9] Not only did plaintiff fail to submit any additional evidence to the ALJ, he also did not submit any additional evidence to the Appeals Council, despite receiving notice of his ability to do so. See Tr. 9, 17. Accordingly, defendant contends that "it is rather specious for Plaintiff to now argue that this matter be remanded due to the absence of these documents, despite a sufficient record and Plaintiff's own refusal to obtain and submit the very documents which he now argues are so vital. To find remand necessary under these circumstances would simply provide savvy claimants and/or their representatives a hidden mechanism with which to obtain remand."

---

[9] Attorney Rubenstein, who represented plaintiff at the administrative level, has recently retired from practice.

Doc. #31-1 at 14. The Court appreciates defendant's frustration, but the law of this Circuit places the burden on the ALJ, not the claimant, to develop the administrative record. See Tejada, 167 F.3d at 774 ("[I]t is the rule in our circuit that the ALJ, unlike a judge in a trial, must affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding, even if the claimant is represented by counsel." (citation and internal quotation marks omitted)). Thus, "[w]hile plaintiff has the burden of producing evidence of her impairments ... it is the ALJ's burden to affirmatively develop the record." Parker, 2015 WL 928299, at *12 n.14.

Indeed, "where there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history even when the claimant is represented by counsel or by a paralegal." Rosa, 168 F.3d at 79; see also Spain v. Barnhart, No. 02CV4605(FB), 2003 WL 21254782, at *4 (E.D.N.Y. May 29, 2003) ("[A]n ALJ has an obligation to develop the record ... regardless of whether the claimant is represented by counsel, if there is a reasonable basis to believe that relevant medical evidence might be available." (quoting Shaw, 221 F.3d at 131)). Here, despite defendant's arguments to the contrary, not only is there a deficiency in the record, but there was also a reasonable basis to believe that relevant medical evidence,

including treatment notes and retrospective medical opinions, were available.

There is a significant gap in the record for the time period under consideration, December 12, 2002, through March 31, 2005. There is only <u>one</u> treatment note of record for the period between May 29, 2003, and June 25, 2005, when the ALJ found plaintiff's condition improved. <u>See</u> Tr. 304 (treatment note dated March 2, 2004). For the approximately 27 months under consideration, there are only <u>four</u> treatment notes of record, dated December 2, 2002, February 27, 2003, May 29, 2003, and March 2, 2004. <u>See</u> Tr. 304, 306, 308, 317. In that regard, defendant's contention that there are no gaps in the record, and that "the record contains approximately 250 pages of medical records, spanning the rather short relevant period of less than four years[,]" Doc. #31-1 at 10 (citing Tr. 275-527), is not accurate. The records cited to in support of that assertion do not entirely span the relevant time period now at issue -- December 12, 2002, to March 31, 2005. Rather, the majority of those records post-date plaintiff's date of last insured by anywhere from two to ten years. <u>See</u> Tr. 328-527.

The record also suggests that other medical records may have existed that would have been helpful to the ALJ's determination. As plaintiff contends, "[t]here are no documents

of any sort or description from Dr. Panullo." Doc. #26-2 at 10.
Evidence of record indicates that Dr. Panullo, a
gastroenterologist, saw plaintiff from the fall of 2005 until
December of 2006. See Tr. 296 (December 21, 2006, treatment note
authored by Dr. Vender: "In my absence in the past 1 1/2 years,
he saw Dr. Panullo, who discussed the use of Remicade.").
Treatment records confirm this, as they reflect Dr. Vender last
saw plaintiff on June 28, 2005, and directed plaintiff to
follow-up within four months. See Tr. 299-300. Although Dr.
Panullo saw plaintiff after plaintiff's date of last insured,
"the Second Circuit has held that medical records that post-date
the date last insured may be pertinent evidence of the severity
and continuity of impairments existing before the date last
insured or may identify additional impairments which could
reasonably be presumed to have been present and to have imposed
limitations as of the date last insured." Carlson v. Barnhart,
No. 3:05CV1584(SRU)(WIG), 2006 WL 2926818, at *5 n.5 (D. Conn.
Aug. 30, 2006); see also Lisa v. Sec'y of Dep't of Health &
Human Servs. of U.S., 940 F.2d 40, 44 (2d Cir. 1991). Given the
dearth of information for the time period under consideration,
the Court finds that Dr. Panullo's treatment records could have
been helpful to the ALJ's determination. This is particularly so
given the cyclical nature of plaintiff's disorder, see Tr. 299

(June 28, 2005, treatment note: "Roughly every three months, he

has a flare of his symptoms[.]"), and the time frame in which

Dr. Panullo treated plaintiff. See Camilo v. Comm'r of the Soc.

Sec. Admin., No. 11CV1345(DAB)(MHD), 2013 WL 5692435, at *18

(S.D.N.Y. Oct. 2, 2013) ("[E]vidence that a claimant suffered

from a disability after the date last insured is relevant to the

question whether the claimant was disabled prior to the date

last insured." (citation omitted)). The ALJ's failure to make

any effort to obtain such records is therefore error.[10]

    Most significant, however, is that the ALJ did not attempt

to obtain any retrospective medical opinions regarding

plaintiff's functional capacity during the relevant time period.

Where "the record contains sufficient evidence from which an ALJ

_____

[10] Each of the four records covering the relevant time period was
sent by plaintiff's gastroenterologists to plaintiff's primary
care physician, Dr. Ginsberg. See Tr. 305, 307, 309, 318. This
suggests that Dr. Ginsberg was working with plaintiff's
gastroenterologists to manage plaintiff's care. See also Tr.
288-92 (letters from Dr. Vender to Dr. Ginsberg). Yet, as
plaintiff asserts, there are no treatment notes from Dr.
Ginsberg in the record. See Doc. #26-2 at 10. Although there is
no indication that the ALJ made any attempt to obtain these
records, it appears that these records may not exist. See Tr.
122 ("Clmt reports only source Pre DLI GI center of CT." (sic));
Tr. 131 ("Clmt identified at initial claim that only one source
applied for time period prior to DLI. This MER has been received
and is in the file." (sic)). Accordingly, the Court finds no
error in the ALJ's failure to obtain the records from
plaintiff's primary care physicians, as there is no indication
that such records exist.

can assess claimant's residual functional capacity, a medical source statement or formal medical opinion is not necessarily required." Monroe v. Comm'r of Soc. Sec., 676 F. App'x 5, 8 (2d Cir. Jan. 18, 2017) (quotation marks and citations omitted); see also Tankisi v. Comm'r of Soc. Sec., 521 F. App'x 29, 34 (2d Cir. 2013) ("[R]emand is not always required when an ALJ fails in his duty to request opinions, particularly where, as here, the record contains sufficient evidence from which an ALJ can assess the petitioner's residual functional capacity."). Defendant emphasizes that point, contending that the record contains substantial evidence to support the ALJ's RFC determination. See Doc. #31-1 at 10-12. The Court disagrees. Here, there is little evidence -- just four treatment notes -- upon which the ALJ relied. This is hardly significant, or substantial, for a period covering nearly two and one half years. Thus, given the dearth of evidence upon which the ALJ based his decision, "it was legal error for the ALJ to rely on Plaintiff's lack of evidence from the relevant time period to deny benefits without first attempting to adequately develop the record, or to pursue or consider the possibility of retrospective diagnosis[.]" Rogers v. Astrue, 895 F. Supp. 2d 541, 552 (S.D.N.Y. 2012) (citation and internal quotation marks omitted)); see also Stewart v. Astrue, No. 10CV3032(DLI), 2012

WL 314867, at *10 (E.D.N.Y. Feb. 1, 2012); Pino v. Astrue, No.
09CV3465(DAB)(MHD), 2010 WL 5904110, at *20-21 (S.D.N.Y. Feb. 8,
2010), report and recommendation adopted, 2011 WL 814721 (Mar.
8, 2011).

Additionally, the four records on which the ALJ relied in
no way "shed any light on [plaintiff's] residual functional
capacity." Guillen v. Berryhill, 697 F. App'x 107, 108 (2d Cir.
2017) (remanding for further development of the record where the
ALJ failed to obtain a medical source statement from plaintiff's
treating physician and where the medical records did not "shed
any light on [plaintiff's] residual functional capacity.");
Dennis v. Colvin, 195 F. Supp. 3d 469, 474 (W.D.N.Y. 2016)
(Where the "medical findings in the record merely diagnose [the]
claimant's exertional impairments and do not relate these
diagnoses to specific residual functional capabilities such as
those set out in 20 C.F.R. §404.1567(a) ... [the Commissioner
may not] make the connection himself." (quoting Deskin v. Comm'r
of Soc. Sec., 605 F. Supp. 2d 908, 912 (N.D. Ohio 2008))). Nor
is there sufficient medical evidence of record, for the time
period under consideration, from which the ALJ could have drawn
a reasonable conclusion.

Defendant further contends that "[i]t is also noteworthy
that any medical source opinion here would have been completed

10 years after the end of the relevant period." Doc. #31-1 at
11. That argument, although compelling, is not supported by the
law in this Circuit. "Consideration of the duty to develop the
record, together with the inclusion of retrospective diagnoses
in the scope of the treating physician rule, produces an
obligation that encompasses the duty to obtain information from
physicians who can provide retrospective opinions about the
claimant." Lacava v. Astrue, No. 11CV7727(WHP)(SN), 2012 WL
6621731, at *13 (S.D.N.Y. Nov. 27, 2012), report and
recommendation adopted, 2012 WL 6621722 (Dec. 19, 2012). Indeed,
"a retrospective diagnosis by a treating physician is entitled
to controlling weight unless it is contradicted by other medical
evidence or 'overwhelmingly compelling' non-medical
evidence." Martinez v. Massanari, 242 F. Supp. 2d 372, 377
(S.D.N.Y. 2003) (quoting Rivera v. Sullivan, 923 F.2d 964, 968–
69 (2nd Cir. 1991)). Even the retrospective opinion of a
treating physician who did not treat a claimant during the
relevant time period is "is entitled to significant weight[.]"
Campbell v. Barnhart, 178 F. Supp. 2d 123, 134 (D. Conn. 2001)
(quoting Dousewicz v. Harris, 646 F.2d 771, 774 (2d Cir. 1981)).
Accordingly, it does not alter the Court's analysis that an
opinion elicited from one of plaintiff's treating physicians
would post-date the relevant time period by over ten years,

because "the fact that a treating physician did not have that status at the time referenced in a retrospective opinion does not mean that the opinion should not be given some, or even significant weight." <u>Monette</u>, 269 F. App'x at 113.

Defendant further contends that "[t]he treatment records clearly established that Plaintiff was essentially asymptomatic during the time frame for which he was found not disabled." Doc. #30-1 at 12. Although the records relied upon by the ALJ do reflect that plaintiff was then in good health, they do not cover the entire period under consideration. This is particularly significant in light of the cyclical nature of plaintiff's disease.

Accordingly, the Court finds the ALJ failed to adequately develop the record. When a record is incomplete, a decision based thereon is not supported by substantial evidence. <u>See</u> <u>Pratts</u>, 94 F.3d at 38. In light of this finding, the Court need not reach the merits of plaintiff's remaining arguments. Therefore, this matter is remanded to the Commissioner for further administrative proceedings consistent with this Ruling. On remand the Commissioner will address the other claims of error not discussed herein.

Finally, the Court offers no opinion on whether the ALJ should or will find plaintiff disabled on remand. Rather the

Court finds remand is appropriate for further development of the record, as discussed herein.

**VII. <u>CONCLUSION</u>**

For the reasons set forth herein, plaintiff's Motion to Reverse the Decision of the Commissioner **[Doc. #26]** is **GRANTED**, to the extent plaintiff seeks a remand for further administrative proceedings, and defendant's Motion for an Order Affirming the Decision of the Commissioner **[Doc. #31]** is **DENIED**.

SO ORDERED at New Haven, Connecticut, this 17th day of May, 2018.

_____/s/_____
HON. SARAH A. L. MERRIAM
UNITED STATES MAGISTRATE JUDGE
